IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL KOVACH,                     :
                                    :
         Plaintiff                  :
                                    :
     v.                             :   CIVIL NO. 3:CV-13-1099
                                    :
SUPERINTENDENT KERESTES, ET AL.,    :   (Judge Conaboy)
                                    :
         Defendants                 :
_____

**MEMORANDUM**
**Background**

    This pro se civil rights complaint pursuant to 42 U.S.C. § 1983 was filed by Michael Kovach, an inmate presently confined at the State Correctional Institution, Somerset, Pennsylvania (SCI-Somerset).  An Amended Complaint (Doc. 29) was thereafter filed.

    By Memorandum and Order dated August 7, 2015, a motion to dismiss by Defendant Doctor Tony Ianuzzo was granted. See Docs. 45 & 46.  Remaining Defendants are the following officials at Plaintiff's former place of confinement the Mahanoy State Correctional Institution, Frackville, Pennsylvania (SCI-Mahanoy): Superintendent John Kerestes; Unit Manager Burnedette Mason; and Correctional Officer (CO) Cebulak.

    Plaintiff states that he was placed in an SCI-Mahanoy cell with Inmate Dean Palmer on October 16, 2012.  The Complaint asserts that at the time of that placement, Superintendent Kerestes, Unit Manager Mason, and CO Cebulak were "totally aware" that Palmer had a "history of assaultive behavior" and required single cell status. See Doc. 29, ¶ 8.

1

Plaintiff states that he was sleeping on the top bunk in his cell during the early morning of October 17, 2012, when both he and his cellmate were awoken by Palmer's loud snoring. Palmer purportedly became restless, kept turning the light on and off, and began pacing back and forth. It is also alleged that Inmate Palmer told Plaintiff that "I can't sleep, your not either." Id. at ¶ 9.

A short while after Kovach attempted to go back to sleep, his cellmate allegedly poked him in the ear with a pen. When Plaintiff attempted to climb out of the top bunk, Inmate Palmer continued the attack by pulling Kovach to the floor of the cell. Following Kovach's activation of the cell's panic button, Co Cebulak responded to the incident but despite Palmer's ongoing agitated conduct would not allow Plaintiff to leave the cell for approximately forty-five (45) minutes until other officers arrived. The Amended Complaint suggests that if CO Ceulak had been making his proper rounds, he could have prevented the attack from occurring. See id. at ¶ 16.

After Plaintiff's removal from his cell, he was taken to the prison infirmary where his injuries to his ear and face were examined and cleaned by a nurse assistant.[1] However, because there was no doctor on duty Plaintiff went without treatment from 4:30 a.m. to 8:00 a.m. When the doctor arrived the following morning, Plaintiff's ear was stitched and glued "back together." Id. at ¶ 13.

The Complaint concludes that Cebulak's conduct that morning constituted deliberate indifference to his safety. Unit Manager

---

1. Kovach also indicates that he injured his back.

2

Mason likewise acted with deliberate indifference by purportedly assigning Palmer, a prisoner with known psychiatric problem, a single cell classification, and a history of assaults, as his cellmate.  The Complaint further contends that Superintendent Kerestes similarly acted with deliberate indifference by allowing Palmer to be housed with another prisoner, and by not instituting a policy which would allow correctional officers to immediately remove an inmate assault victim such as Kovach from his cell; by not having a doctor on duty at all times; and by not directing that be Plaintiff transported to a hospital for immediate treatment. The Amended Complaint seeks injunctive and declaratory relief as well as compensatory and punitive damages.

   Remaining Defendants have filed a motion to dismiss the Amended Complaint. The unopposed motion (Doc. 32) is ripe for consideration.

### **Discussion**

   The Remaining Defendants, who are all employees of the Pennsylvania Department of Corrections, argue that they are entitled to entry of dismissal on the grounds that: (1) the claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment; (2) the Amended Complaint fails to allege personal involvement by Kerestes and Mason in any constitutional misconduct; (3) Plaintiff failed to exhaust his available administrative remedies and (4) a viable claim of deliberate indifference has not been alleged.

3

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.

A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 556 U.S. at 678.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

4

Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Official Capacities**

Remaining Defendants' initial argument contends that the claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment. See Doc. 35, p. 6. As previously noted, the argument is unopposed.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages. Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003). Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency. Will, 491 U.S. at 70-71; Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005). As such, Kovach's damage claims brought against the Remaining Defendants in their official capacities are considered to

be against the state itself and are barred by the Eleventh Amendment.[2]

**Personal Involvement**

The motion to dismiss next asserts that "Plaintiff fails to allege any involvement by Superintendent Kerestes or Ms. Mason in the events leading up to the October 17 assault." Doc. 35, p. 7. Accordingly, those two defendants are entitled to entry of dismissal. The argument is unopposed.

A plaintiff, in order to state an actionable § 1983 civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

---

2. To the extent that Plaintiff is seeking injunctive and declaratory relief against the Remaining Defendants in their official capacities, such requests are not barred by the Eleventh Amendment. See Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

6

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against the Warden solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

With respect to Defendant Kerestes, Plaintiff generally claims that the Superintendent was "totally aware' of Inmate Palmer's history of assaultive behavior and that said prisoner had been previously designated to be housed in a single cell. Doc. 29, ¶ 8. The Superintendent also allegedly approved an institutional practice or policy of not allowing a prisoner to be removed by a

7

guard unless other staff were present.  Moreover, Kerestes was aware that the prison did not have a doctor on duty during the third shift.

This Court agrees that any claim based upon Kererstes' review of any grievance filed by Kovach does not establish personal involvement in constitutional misconduct.  As such, any such allegations are insufficient to assert a Section 1983 claim.  See Watson v. Wetzel, No. 11-281J, 2013 WL 501376 *4 (W.D. Pa. Jan. 9, 2013); Wilkerson v. Shafer, No. 09-2539 2011 WL 900994 * 7 (M.D. Pa. March 14, 20110( a claim that a defendant "should be held liable for due process violations because they should have become aware of the through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct").

Second, there are no facts asserted to show that the Superintendent approved or was aware that Palmer was actually being double celled with the Plaintiff.  There are also no facts set forth showing that the Superintendent was contacted at home the night of the assault and failed to authorize the prisoner's transfer to a hospital for immediate treatment.  Accordingly, it is appears that with respect to those claims Plaintiff is attempting to establish liability against Kerestes solely based upon his supervisory liability which is prohibited by Rode.  Entry of dismissal with respect to said claims is likewise appropriate.

However, the Amended Complaint does adequately allege that Kerestes was personally involved in the initiation or acquiescence of prison policies that resulted in deliberate indifference to the Plaintiff's well being. Namely, that a doctor was not on duty

8

during the overnight hours and that a policy resulted in a 45 minute delay in the extraction of Kovach from his cell after being assaulted. The request for dismissal of those claims on the basis of lack of personal involvement will be denied.

With respect to Unit Manager, the Amended Complaint has alleged that she personally knew or acquiesced in the decision to allow Palmer and Kovach to be housed together despite the fact that Palmer was previously designated for single cell placement because of his history of assaultive behavior. Those assertions adequately allege personal involvement at this juncture in the proceedings by Mason in an alleged failure to protect Plaintiff from a known risk of harm. Mason's request for dismissal on the basis of lack of personal involvement will be denied.

Kovach's Amended Complaint states that he used the prison's grievance procedure "to try and solve the problem." Doc. 29, ¶ 14 Plaintiff indicates, and Remaining Defendants do not dispute, that he filed a single administrative grievance regarding the events underlying the Amended Complaint.

The Amended Complaint acknowledges that this sole grievance was rejected and points out that copies of his grievance and responses were submitted along with his Original Complaint. See id. An attachment to the Original Complaint clearly shows that Kovach's sole grievance was rejected by the prison's Grievance Coordinator on the basis that grievances based upon different events must be presented separately. See Doc. 1, p. 13. Following a SOIGA appeal that decision was affirmed and said decision clearly explained to the Plaintiff that concerns regarding medical treatment resulting from the assault must be raised in a separate

9

grievance from concerns regarding allegations of failure to protect.  See id. at p. 14.

Documents submitted by the Plaintiff himself show that his grievance was rejected and not addressed on its merits.  Kovach has also failed to oppose the pending non-exhaustion argument.  Since Plaintiff's submissions show that he failed to comply with the grievance system's procedural rules as mandated under Woodford, remaining Defendants have satisfied their burden under Williams of establishing that Plaintiff's pending claims were not properly exhausted.  Furthermore, since Kovach has not made any viable showing that he should be excused from compliance with the exhaustion requirement, entry of dismissal on the basis of non-exhaustion with respect to the surviving claims is appropriate. To hold otherwise, would clearly undermine the intent of the exhaustion requirement to afford correctional administrators the initial opportunity to discover and correct their own errors.  See Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000).  Remaining Defendants' unopposed motion to dismiss will be granted.[3]  An appropriate Order will enter.

                               S/Richard P. Conaboy
                               RICHARD P. CONABOY
                               United States District Judge

DATED: AUGUST 25 , 2014

---

3.  In light of the Court's conclusion, consideration of the Remaining Defendants' final argument is not required,

10